A grant void in law may be set aside at the instance of a prior grantee, by sci. fa. in the name of the government; and when void ab initio, the Court and the jury, on a trial in ejectment, or other action where the question becomes material, may consider it so, and the party opposed to it may plead nonconcessit. A second patentee can not have the sci. fa.
because not prejudiced by the first grant when it issued, and because the right to a real action can not be transferred by the government without a special recital, which is not contained in the second grant. But a sci. fa. may issue, though the grant be void, to prevent the multiplicity of actions, which its continuing unrepealed might produce. Dy. 197, 198; 5. Com. Dig. Patent, F. 4, F. 5; 10 Rep. 169; 11 East, 106; 5 Com. Dig. Patent, F. 1; 17 Vin. 78 Pl.; 6 Plow. Com. 492; 2 Vent. 944; 17 Viner, 113, 114.
In other cases where a grant becomes void by matter of pais expost facto, it can not be avoided but by *Page 207 sci. fa.; and the sci. fa., being a writ founded upon matter of record, must issue either upon the record of the patent in the Petty Bag, or upon an inquisition returned into a court of record or conviction upon an indictment in a court of record. 5 Com. Dig. Patent, F. 7, F. 8; 1 Ny. F. 420, 426. In this country, it can only issue upon an inquisition or verdict; for there is no court in which the patent is recorded. 17 Vin. 115, Plac. 3. None but the first grant can be impeached by it, at the instance of the public, or one having a right infringed by it when it issued: That, perhaps, is the reason why courts of equity in America do not consider the grants void which are obtained in prejudice of an equitable right, but order the grantee to convey to him, which would not benefit the plaintiff if the grant were void. The Circuit Court, having by various acts The same power as the Court of King's Bench exercised, may give judgment of cancellation, 2 Saund. 23. But the sci. fa. in which it is given must be founded upon a previous inquisition returned into court, or upon a conviction as before stated.
In the case of grants absolutely void, in some cases a sci. fa.
is useless; as, if the lands be not grantable by law, that can nut be made more apparent by any verdict or other proceeding upon the sci.fa., or where lands are granted by a supposed power not embracing them; if the grant upon the face of it is to be void upon condition, the performance of which is to appear of record by a certain day, on which it does not appear of record, and the breach is as evident already as it could be made by a verdict on record. But the case is otherwise where the fact does not appear of record. It is apprehended that a repeal can not be affected by a bill in equity; because, that originally being no court of record, its sentence or decree could not nullify a record. For unum quodque dissolvitur eo ligamine quoligatur; *Page 208 
and since these courts were made courts of record, this new jurisdiction has not been added to them. And how can they exercise jurisdiction, when the courts of law are competent, proceeding by common-law forms, and by the verdict of a jury? Moreover, where is the record that can give the Court of Equity a power to act upon it? No office or inquisition is returned into equity, nor any conviction made there upon the trial of informations or indictments. These are provided as safeguards to the people; their rights can not he approached but through the flat of a jury; and shall a court of equity proceed without them, when a sci. fa. could by no means he resorted to? A court of law can give judgment of consultation; it can cause offices to be found, and traverses to be made and tried, and the attorney-general will assist when instructed by the government, or some person is injured and is entitled to be relieved against a grant that first issued.
Notwithstanding, however, a grant may not be repealed if void, its invalidity may be noticed when it comes into question collaterally in an action. Then the Court incidentally determines the question, and gives judgment for or against the grantee, leaving the grant unrepealed, and in a condition to be brought forward at another time, when the claimants under it may think proper. There is no inconvenience in this when the cause of invalidity appears on the face of the grant, as if it be a second grant, for land already granted to another, and that appear on the face; or if it be for Indian lands, and that appear on the face of the grant; and even if the fact did not appear on the face of the grant, but was found by verdict; or if the grant be founded upon a warrant of commissioners who have no power in that particular case to direct the grant to issue, and it appearing on the face to have issued on such unauthorized warrant. 17 Viner, 114, 115, Pl. 2. Should. North Carolina open an office, *Page 209 
and sell lands in Tennessee, and issue grants upon pretence of a power reserved to her by the Cession Act, or upon a forged warrant, or for the satisfaction of a claim not comprehended in the Cession Act; or if one should die without heirs in Tennessee, leaving lands undevised, could these be entered in our present offices and granted? Certainly not. The authority of these officers only extends to vacant lands never before appropriated. And, as soon as the fact is sufficiently verified that these were escheated lands, the law would pronounce it void, and the Court would be bound so to consider it. So likewise of the lands confiscated, which should be entered and granted as vacant lands; the entry taker having no power to receive an entry for such land, nor to issue a warrant for the surveying of them. A grant of such land's, founded upon such entry and survey, would be considered as of no effect; and would be wholly disregarded when a jury were satisfied of the fact of their being confiscated lands. Though if the grant remain unrepealed, and at some future day the fact of confiscation should become incapable of proof, the grant would then take effect. If the alleged cause of invalidity were the breach of a condition subsequently to be performed, or some act done ex post facto; such grant could not be avoided by a sci. fa. founded upon an inquisition. For the estate once vested by it, could not be divested but by a solemn act equal in dignity to the grant itself. Suppose military lands entered in John Armstrong's office, and paid for in money, and a survey and grant of them, all which appeared on the face of the grant. The Court would say without further inquiry, it is void. If the fact did not appear in the grant, but on a special verdict between A. and B., the Court would, as between these parties, avoid the effect of the grant in that controversy, though not the grant itself. The Court would, in that contest, give judgment against him who *Page 210 
claimed under the grant. If the same fact appeared upon inquisition and traverse, and a sci. fa. founded upon it, then the Court could in their judgment order the grant itself to be cancelled. A court of equity could not say the grantee should be a trustee for a subsequent military grantee, for what legal estate would be in him to support the trust? If by law a military claim could not be satisfied by lands enterable in J. Armstrong's office, and the grant should show upon the face of it that a grant for military services had issued for lands in John Armstrong's district, it would be considered as a void grant. But if in any case such grant could be legal, then it would not be considered as void until further and more distinguishing proceedings were used. It is often urged that grants are good till repealed bysci. fa., like a judgment unreversed though erroneous, and that they can not be treated as void in collateral actions. Now, the fact which makes void the grant can not be determined otherwise than by jury if it be disputed. The verdict must be founded upon facts proved by any sort of testimony by winch such a fact can be proved in other cases between A. and B. in case of a deed. If the grant were for concealed land as stated in one of the cases cited, and the truth is that the lands were not concealed, for which untruth the grant is void in law, could you not prove to the jury, that an account was rendered of them to the public officer? 10 Rep. 109. If the grant were founded upon the warrant of commissioners, and the lands in fact were not within their commission, for which cause the grant is void, could you not show by parol testimony before a jury that the lands are situated at a place beyond the bounds stated in the commission? 5 Com. Dig. Patent. F. 1. If the grant be of a bond in consideration, that is, to be forfeited hereafter, when it is already forfeited, and for such misstatement the grant be void, can not this be shown by parol testimony? 17 Viner, 103 Pl. *Page 211 
16. If confiscated lands be entered, surveyed, and granted, can not the fact be shown both on a sci. fa. and in collateral actions by parol proof showing that they were a part of the lands declared to be confiscated by law? And upon such parol proof will not a verdict find the fact? Why not use here the same testimony as in the case of deeds to overturn them, by showing such fraudulent acts as will invalidate them in law. Will not a man's inheritance be subverted in the one case as well as in the other? If is enough that a jury is to pass upon the fact, and that it can not be considered as established till their verdict pronounce it so. This is the provision which the Constitution has made for the safety of the citizen; and it is enough, so long as the trial by jury shall be preserved in its pristine purity. It is admitted that such evidence may be given oh a sci. fa. or bill in equity; why not also in ejectment when, by law, such fact is material to be ascertained in it? Much inquiry, it is said, will result to purchasers if such be the law. Then let the Legislature confirm such grants, if they think proper, which are in danger. Their not doing it hitherto is a proof that they do not wish to interfere. The act of limitations, also, will settle a great number of such controversies. But what is a better answer and more proper for a republican court isfiat justitia ruat coclum. The rule of nullum tempusoccurret applies not in favor of a grantee under the State. The act runs against him from the date of his grant. In case the worst should happen, the innocent vendee may go upon his warranty against his vendor, and so down to him that did the wrong. The law can not be altered without legislative interposition for the accommodation of unrighteous grants, originating in fraud and imposition upon the public. Those which do not so originate are in no dread, nor in any danger, from the deprecated doctrines. As enters and produces a grant for confiscated land or escheated *Page 212 
land, then another grant issues from the proper offices observing all the forms and regulations of the law, and then the second grantee is sued by the first grantee. Must it not be inquired whether these were confiscated or escheated lands? Must it not be allowed to be proved by parol, that the late owner is dead without kindred capable of inheriting his real estate? Must it not be allowed, with respect to the confiscated lands, to prove by parol that the same belonged to a refugee, and were a part of the lands which the law condemned for public uses? If not, then he who is both fraudulent and illegal will prevail against him who is fair and legal in all respects. The idea advanced is a very correct and proper one when grown to maturity, but very unsound in its imperfect state. Lands granted can not be resumed by the government upon statements and proofs made to, and determined by, the judges, or any other persons, for fear of the mischiefs that oppression might bring on individuals, especially the weaker sort. They are surrounded by the protection of a jury. Their verdict is to be the foundation of proceedings on the part of the government; and, until their verdict be of record, the fact does not appear which avoids the grant. In this sense it is that a grant can not be avoided by parol testimony. It can not be rescinded but upon a verdict solemnly rendered, and entered of record with the approbation of the judges. This is the highest act of solemnity known to our law, and gives a sure pledge to the citizen that his property will not be sacrificed at the whim and caprice of any power known in our Constitution. "No freemen shall be taken or imprisoned or disseised of his freehold, liberties, or outlawed or exiled, or in any manner destroyed or deprived of his life, liberty, or property but by the judgment of his peers or the law of the land." Bill of Rights, section 8; in other words, by due course of law. Judgment to disseise him of his freehold can not be *Page 213 
rendered, but upon an office to serve as a foundation to a sci.fa., and verdict upon a traverse in favor of the State. That, and not parol testimony, shall alone be competent in case of a disputed fact to support a judgment of repeal. The first step can not be taken till after an office, either for causes of repeal antecedent to the patent or ex post facto. Hence has arisen the misunderstood expression, that grants could not be made void on parol evidence. It is going much too far to say they can not be avoided upon the foundation of a verdict, which itself is founded upon parol testimony of a fact which can, in other cases, be proved by the same testimony. It is said, the matter to impeach a grant can be more precisely stated in a bill in equity that it can be at law. But if a sci. fa. be used, surely as complete, pointed, and material an issue can be made up, upon the mutual pleadings and allegations of the parties, as by any bill in equity. If the remark be meant of a collateral action, then the impeached grantee ought not to complain that the fact can be less forcibly urged in this way than upon a sci. fa. or bill in equity, and especially when in this way, though the effect of his grant shall be defeated in one action, new actions and new ejectments may be brought till a full trial be had, and after all the grant is not rescinded.
Can the impeached grant complain of these liberalities? and shall it be said of the impeaching cause that it shall not now be urged, in defence of present rights, for fear it may not be argued effectually? Shall I be excluded from defending myself now in the expectation that, after I have lost my property in the present action, that defence can made and with more effect hereafter? What shall become of me in the meantime? I have heard it said, by way of consolation that he who runs away may light at another day; but I have never heard it recommended to run away, now, and give up possession, in hope of regaining it *Page 214 
hereafter. Why not repel the claim of your adversary now if it can be done? It seems therefore very probable that, in this action, the impeached grant, as to its effects, may be avoided; though it can not be repealed upon evidence given in this action. If void, the judgment in this action may be given against those who claim under it, as if it were not at all in existence. And here it is not immaterial to remark that, in every American case where the validity of a grant has been examined, the question, it is believed, arose in a collateral action. The courts did not say they could not examine it. Look at these cases; they arose upon informations of intrusions, actions on the case, or actions of ejectment or other actions. Would the court discuss the question if they could not determine it, or examine into the nullifying causes alleged if, after ascertaining their existence, they could not advert to them in deciding the matter of dispute in that action? I do not believe a single case has been cited where the question arose on asci. fa. or bill in equity for the same purpose. It arose in 4 Dallas, 237, in a feigned issue on a wager, and in 245 the judgment is rendered without taking any notice of the grant. And so it arose in all the cases cited at the bar in former arguments as having been decided in this State; not in a suit the direct object of which was the repeal of the grant. In the labored case of a quo warranto
information, and upon issues made up in that action, the validity of the grants brought forward in pleading was discussed; and judgment was given without taking notice in the judgment of the grant for the defendant. 2 Term Rep. 5, 15-569. Did any one of the learned counsel or judges doubt in this case the propriety of the investigation? or in 4 Term Rep. 122? Why say it shall be collaterally investigated in case of being void for one cause, but not for being void for any other? Are grants void in any case but for an odious cause? And *Page 215 
shall they, notwithstanding that cause can be proven most satisfactorily, be held up as good grants, and be used to turn men out of their honest possessions, because such grants may not have been formally impressed with the seal of condemnation? 1 Tenn. 314, 31, are upon collateral actions. But 1 Tenn. 31, it must be confessed, was upon a bill in equity to declare the patent void; and upon the default of the defendant it was declared so. May it not be permitted to submit for reflection, that this bill was not founded upon any office returned of record; which, had it been required, as in a sci fa. it would, that decree possibly would never have passed. The case in 1 Tenn. 370, respects a grant becoming void ex post facto for non-registration, which is there said to be only voidable, and was competent to be given in evidence; with which this present opinion precisely accords, and it was an incidental question. It is, then, very material to know for what causes grant may be deemed void. If it be for matters not grantable by law it is void; as, for a monopoly in lands separated for special purposes from other public lands. 5 Com. Dig. Patent. Also if granted upon the supposed existence of a material fact, suggested by the grantee, which fact does not exist; being a fact, also, without which the grant ought not to have issued, and could not have issued. 10 Rep. 112; 12 Mo. 78; 17 Viner, 97; Pl. 3, Pl. 4. Pl. 6. Pl. 7, Pl. 10; 17 Viner, 100. It is void, also, if that which is the cause of the grant be falsely recited in the grant. 17 Viner, 104. It is void, also, if not issued upon sufficient authority, as by persons having a commission, but not extending to the thing granted. 17 Viner, 14 Pl. 2; 6 C. Dy. Patent F. 1; 17 Viner, 78.
But the grant is not void, if any mistake or miscalculation or wrong step taken by the officers of the government in stages precedent to the emanation of the grant, which is not induced by the fraud or *Page 216 
misconduct of the grantee. The public employs them, and is responsible for their acts, and must look for retribution in such cases to them, and not to the innocent grantee. It is not void if more lands be within the bounds described than the grant calls for. 17 Viner, 103, Pl. 21. Or if money paid be the consideration, and it never was paid. 17 Viner, 181 Pl. Nor if any personal thing or service be the consideration, which never was rendered or paid. 17 Viner, 187 Pl. Imperfect and informal entries; wrong surveys, without demarcation or chain carriers; surveys not made to the cardinal points, but in forms different from those prescribed by law; plats and certificates not made out and certified exactly as the law directs, — these, if prejudicial to the government, are no causes for rescinding the grant. The government ought to suffer for the acts of its officers whom it appoints and trusts. Considerations past, and affirmed in the patent to be so, need not be found, and are not material; but considerations future must be performed, and must be found to have been so. 5 Rep. 94; 17 Viner, 151. And here it is not improper to add that every grant is to be construedad plenitudinem; so as not to be defeated if by any fair consideration it can be made conformable to the rules of law. 2 Inst. 496, 497. The government issues the grant, and is far more powerful, and at times more oppressive, than any individual can be. Against that the Constitution is erected, and against him who seeks moverequieta the law in justice ought to make construction, rather than against him who only seeks protection.
If, then, a void grant may be rejected, and in this form of action, we must necessarily inquire into the alleged causes of invalidity, urged against the grant under which the defendant claims; for, if the grant be void, the defendant can not be entitled by it alone to hold possession. And then the principal question here is. Could a military claim be satisfied when the *Page 217 
grant issued, by lands beyond the military bounds? The Act of 1783, c. 3, section 7, directs "that the officers and soldiers aforesaid, shall enter and survey within the following bounds," c. Sect. 8: "No person or persons but the officers and soldiers (except settlers in Cumberland) shall enter any lands with in the said bounds," c., But by 1784, c. 19, section 7, if is enacted, "that in case it shall happen, that there is not a sufficient quantity of tillable land within the boundaries laid off for the officers and soldiers of the continental line of this State, the deficiency shall and is hereby directed to be made up on any unappropriated lands within the bounds of this State."
A similar provision is made in 1789, c. 3, section 2: "Such officer or soldier who shall fall short of his allotment or proportion, after all the lands fit for cultivation within the same bounds are appropriated, be permitted to take his quota, or such part thereof, c., in any other part of said territory; intended to be ceded, c., not already appropriated." And in sect. 8 of the same act there is this clause: "that the laws in force and in use in the State of North Carolina at the time of passing this act shall be and continue in full force within the territory hereby ceded until the same shall be repealed, or otherwise altered, by the legislative authority of said territory." In 1789, c. 7, section 6, North Carolina declared that, in case of such deficiency, the officer or soldier is entitled to receive such deficiency of his quota in any part of the territory ceded by said act (1789, c. 3.) The Act of 1784, c. 19, section 6 is not repealed or altered by the Act of 1789, but has continued in force to this day. And the main point to be decided is, who under this clause is to determine that there are not lands enough fit for cultivation to make good the several allotments. c.? All prior removals were from one spot to another in the same district. But here the removal is from one district to another, a proof that the Legislature more favored the *Page 218 
military than any other class of men. It must be decided by some one, under this clause, what lands are not fit for cultivation. And in this particular there is much difference between the early settlers, and those who inhabit the country at this flay. Lands were not then deemed tillable unless of the first quality, especially when speaking of land's to be laid off for an officer or soldier. At this day, almost all the lands in the country are deemed fit for cultivation. Who, then, would have said that Stuart and Montgomery barrens were fit for cultivation? yet now they are deemed the best lands in the country. Where and by whom was this decision to be made under the Act of 1784? This act could not be directory to a future Legislature, for that could as well make the provision, if necessary, as the assembly of 1789, and could ascertain whether the case contemplated did exist or not. The clause was very probably intended to operate upon those on whom the assembly could legislate. Martin Armstrong, under the law of 1783, c. 3, section 2, could receive entries only for lands within the military bounds. And he could do no more under the Act of 1784, c. 15. If after the Act of 1784, c. 19, section 7, he still could not receive an entry nor sanction a survey made out of the military bounds, then the clause in question was of no effect. It bound no one, commanded no one, nor was directory to any one who was under any obligation to obey it. Now the construction is a bad one which makes void and of no effect the construed text. The clause must, then, mean that the deficiency should be determined when the entry was offered or survey made, and that the surveyor-general should decide whether there were tillable lands enough in the military bounds. His reception of the entry, or sanction of the survey was in law a declaration of his opinion and sentence upon the subject. Who could better decide upon the fact? He was a high officer, confided in by the legislature in these most important concerns. *Page 219 
He had given bond and taken an oath faithfully to perform the duties of his office. He lived upon the spot, and had better means of information than the assembly of 1784, or any future legislature could have. And where is the great harm if he should mistake a little? A deserving officer or soldier would be gratified, and leave as much land within the military bounds for the public. If fit for cultivation, as it is insisted to have been, the public can readily dispose of it to another at a future day. If not fit for cultivation, it ought not to be put upon the officer or soldier to take it. This at least is a reason why probably the legislature did not think the question of moment enough to be reserved for the ascertainment of a future assembly. The law of 1783, c. 3, section 8, in favor of the military, reunited their entries to be made in three years. It passed on the 10th of April, 1783, and was to expire in April, 1786. The law of 1784, c. 19, section 7, passed the 22d October, 1784. The assembly met on the 19th of November of that year. Could it be contemplated, by the Act of Assembly, 1784, that the assembly in 1785 could ascertain the deficiency of tillable lands, time enough to be carried into effect before the 10th of April, 1786? Any law for that purpose could not be made and published and transmitted 10 Nashville, and made known to the people by that time. The assembly of 1785, c. 10, section 1, enlarged the time for eighteen months from the passing of that art as 1 understand it. Could the legislature of 1784 calculate that such enlargement could ever take place? It can from these considerations be almost pronounced with certainty that the assembly of 1784 did not mean that the deficiency of tillable lands within the military bounds should be ascertained by the assembly of 1785. Did they intend to leave that question to be decided at some future day, either upon a scire facias or issue upon a collateral action between the grantee and some other person? They *Page 220 
could not so intend; for then the military grantee would be for ever in danger and uncertainty by means of the pretended favor bestowed upon him, and finally might be ousted by opinions changing with the times. These would say Why did you not go to the barrens? they are tillable lands of the best quality; and so of other lands not then deemed fit for cultivation. Could it be intended that the military could depend upon so much uncertainly, or indeed any uncertainly at all? The legislature could not mean if. And then they must have meant that the surveyor general, when he received an entry on vacant land or survey on a military warrant, for lands out of the military bounds, should have been previously satisfied that the claimant could not find military lands there deemed fit for cultivation. That such was the meaning of the Legislature seems to be made evident, by considering the Act of 1789, c. 3., There is no provision that is in favor of the military, the same that is before adverted to; and then a subsequent provision in favor of entries in John Armstrong's office located on lands already appropriated. The latter, clause says, "the locator shall have leave and be at full liberty to remove." c. That is not materially different from the expression used in the preceding provision, — such officer shall be "permitted" to take his quota, c., elsewhere Shall have "leave and be at liberty" to remove, and shall be permitted" to take his quota, are to be understood of "leave," "liberty," and "permission" given by that law to those concerned or interested in; not of leave, liberty, or permission to be given by some other and future law. Did not the assembly deem it more safe for one citizen to be provided for instanter by force of a law made now, for the purpose, than by one to be made hereafter by those who might never choose to make it? The duties which North Carolina owed to land claimants, who had fairly acquired their rights, decide unequivocally that *Page 221 
the assembly ought not to devolve to their assignees or to future legislatures the performance which could not be delegated for one instance without injustice to the claimants. Contemporaneous expositions as to entries made in John Armstrong's office, on lands already appropriated, have irreversibly decided what in their case was meant by the law of 1789, saying "shall have leave, and be at liberty." Removals, under and according to that clause, have been made under and according to it ever since; which could not have been if the provision were to be made by Congress. If this clause itself gives immediately the leave and liberty to remove, why not also the preceding clause, the "permission" to the officer or soldier, without any intermediation? There is no difference in reason, and there ought not to be any in construction. The idea expressed in the North Carolina Act of 1789, c. 7, section 5, shows the opinion of that assembly to be in conformity with that now entertained by some of the members of this court. Legislative exposition of statutes is of no weight in point of authority, but in point of persuasibility is oftentimes very considerable. They say in that act, after reciting the clause of 1789, we are now considering. — that such officer or soldier is entitled, c., in any part of the territory ceded. It explains the Act of 1784 in favor of the claimants, and considers their right to be satisfied elsewhere derived under that act, and not under any law to be made by Congress. The grant in question therefore can not be void upon the idea of removal beyond the military bounds without authority. It was authorized in case of deficiency to be determined by the surveyor-general, and that is evidenced by his reception of the entry, or countersigning the plat and certificate of survey.
It is said that this opinion conflicts with Lyda and Pucket, decided by Judge White at Carthage. On the contrary, it accords with the principle of that *Page 222 
case precisely; and differs only in this, that in one opinion the grant of lands or military warrants beyond the military bounds was not authorized by the Act of 1784, c. 19, section 7, whereas, in this present opinion, the authority is considered to have commenced by that act. It agrees also in principle with the case of Goodloe and Wilson and Polk and Sevier. The case in 1 Haywood, 107, 130, 159, 375, and the decisions upon the same point in 2 Haywood, all taken together, establish the position that a grant can not be repealed upon evidence given in a collateral cause, though upon such actions the effect of it may be avoided upon evidence which in law shows it to be void. And that is the point conceded in this present opinion. The case in 3 Call, 419, shows that the mistakes and miscalculations of public officers shall not vitiate a grant, and that is acceded to most completely in the present opinion. 2 Washington, 116, determines, that a grant obtained to the prejudice of a prior equity shall be conveyed to the prior equity; that also is now acceded to most fully, for the grant, being good in law, can not be repealed as a void grant may, and the grantee must be converted into a trustee, or justice can not be effected. The New Y. T. 426, shows that information of an intrusion would not lie for a grant alleged to have become void for non registration, the State having never acquired seisin by office, and sci. fa., the only mode the State has of acquiring possession in such case. The present case exactly accords, and so does the case of Weakly and Simmons in Tennessee Reports, which the present case unreservedly accords with. It is useless to be more particular; all the other American cases which have been cited fall under some one or other of the heads of this present opinion, and are approved by the principles now adopted. 3 Binney, 28, 35; 3 Mass. 379; 1 Johnson, 495; *Page 223 1 Tenn. 17, 30, 166, 187, 269, 315, 318, 319, 323, 531, 533, 535;2 Tenn. 35-38, 154, 155, 303; 335; 1 Hay. 389, 498; 2 Hay 98; Hard. 508; Cooke, 196.
The argument founded on the omission of the legislature to provide for certificates, in cases of military warrants carried into grant's for lands beyond the military bounds, can only show their opinion, but in point of authority is nothing. Judicial opinions can only be given by the judiciary; and, in forming them, the rules of the law and of the Constitution are principally to be consulted. The legislature might have overlooked it. It may be a casus omissus or they have judged correctly upon it. But it is our duty to ascend to the source and spirit of the law, and not rest the rights of the citizen upon any opinions whatever entertained by those not constitutionally intrusted to form them. This argument, then, weighs nothing either way.
And nearly the same may be said of the Act of 1815, so far as it may tend to annihilate private rights, already acquired, or to impair them in any degree by legislative interference. It commands not in any degree, I presume, the obedience of this court. All such acts had better not be made; for judges can not either in preserving their oaths or patriotism give to them the least coloring of submission. That judge is not worthy to have the confidence of his country who would not unhesitatingly oppose them with all the energies he possesses. What is the displeasure of those who make such an act compared with the maintenance of public freedom? And how is this to be supported but by a prompt and decided opposition to all unconstitutional assumptions of power? What must be the opinion entertained of a judge, should an unconstitutional law ever be made with an expectation that he will give it effect? *Page 224 
Much respect is felt for Lyda and Pucket, 2 T. 335, both because of the judge who decided it, and also because the reasoning employed in the case itself is entitled to much consideration. But as to that part of it not accorded with, the decision of a single judge ought not to govern in point of authority if, after much endeavor to agree with it, a full court can not reconcile it to their convictions. And as to the part of that case in which the difference of opinion is found, I can not after much pains taken for the purpose, be satisfied with the part which the present opinion is opposed to.
Affirm the judgment of the Circuit Court.